Scott E. Davis
State Bar No. 016160
SCOTT E. DAVIS, P.C.
8360 E. Raintree Drive, Suite 140
Scottsdale, AZ 85260

Telephone: (602) 482-4300
Facsimile:  (602) 569-9720
email: davis@scottdavispc.com

*Attorney for Plaintiff Aurora Camacho*

# UNITED STATES DISTRICT COURT

# DISTRICT OF ARIZONA

| | |
|---|---|
| Aurora Camacho,<br><br>     Plaintiff,<br><br>     v.<br><br>Liberty Life Assurance Company of Boston; BBVA Compass Bancshares, Inc.; BBVA Compass Bancshares, Inc. Disability Plan,<br><br>     Defendants. | Case No.<br><br>**COMPLAINT** |

Now comes the Plaintiff Aurora Camacho (hereinafter referred to as "Plaintiff"), by and through her attorney, Scott E. Davis, and complaining against the Defendants, she states:

### *Jurisdiction*

1.     Jurisdiction of the court is based upon the Employee Retirement Income Security Act of 1974 (ERISA); and in particular, 29 U.S.C. §§1132(e)(1) and 1132(f). Those provisions give the district courts jurisdiction to hear civil actions brought to recover employee benefits. In addition, this action may be brought before this Court pursuant to 28

U.S.C. §1331, which gives the Court jurisdiction over actions that arise under the laws of the United States.

*Parties*

2. Plaintiff is a resident of Maricopa County, Arizona.

3. Upon information and belief, BBVA Compass Bancshares, Inc. (hereinafter referred to as the "Company") sponsored, administered and purchased a group long term disability insurance policy which was fully insured by Liberty Life Assurance Company of Boston (hereinafter referred to as "Liberty"). The specific Liberty group disability policy is known as Group Policy No.: GF3-850-289800-01 (hereinafter referred to as the "Policy"). The Company's purpose in sponsoring, administering and purchasing the Liberty policy was to provide disability insurance for its employees. Upon information and belief, the Liberty policy may have been included in and part of an employee benefit plan, specifically named the BBVA Compass Bancshares, Inc. Disability Plan (hereinafter referred to as the "Plan") which may have been created to provide the Company's employees with welfare benefits. At all times relevant hereto, the Plan constituted an "employee welfare benefit plan" as defined by 29 U.S.C. §1002(1).

4. Upon information and belief, Liberty functioned as the claims administrator of the policy; however, pursuant to the relevant ERISA regulation, the Company and/or the Plan may not have made a proper delegation or properly vested fiduciary or discretionary authority for claim administration in Liberty.

5. Upon information and belief, Plaintiff believes Liberty operated under a conflict of interest in evaluating her claim due to the fact that it operated in dual roles as the decision maker with regard to whether Plaintiff was disabled as well as the payor of

benefits; *to wit*, Liberty's conflict existed in that if it found Plaintiff was disabled, it was then liable for payment of her disability benefits.

6. The Company, Liberty and the Plan conduct business within Maricopa County and all events giving rise to this Complaint occurred within Maricopa County.

### *Venue*

7. Venue is proper in this district pursuant to 29 U.S.C. §1132(e)(2) and 28 U.S.C. §1391.

### *Nature of the Complaint*

8. Incident to her employment, Plaintiff was a covered employee pursuant to the Plan and the relevant policy and a "participant" as defined by 29 U.S.C. §1002(7). Plaintiff seeks disability income benefits from the Plan and the relevant policy pursuant to §502(a)(1)(B) of ERISA, 29 U.S.C. §1132(a)(1)(B), as well as any other employee benefits she may be entitled to as a result of being found disabled.

9. After working for the Company as a loyal employee, Plaintiff became disabled on or about October 15, 2010 due to serious medical conditions and was unable to work in her designated occupation as a Client Care Analyst. Plaintiff has remained disabled as that term is defined in the relevant policy continuously since that date and has not been able to return to any occupation as a result of her serious medical conditions.

10. Following her disability, Plaintiff applied for short term disability benefits which were approved and have been exhausted through the Company. Upon exhausting her short term disability benefits, Plaintiff filed a claim for long term disability benefits under the relevant policy which was administered by Liberty, meaning it made the decision with regard to whether Plaintiff was disabled.

1                11.     Upon information and belief, the relevant Liberty policy and definition of
2   disability governing Plaintiff's long term disability claim is as follows:

"Disability" or "Disabled" means:

1. For persons other than pilots, co-pilots, and crewmembers of an aircraft:

    Applicable to Class 1:

a.   if the Covered Person is eligible for the Maximum Own Occupation benefit, "Disability" or "Disabled" means during the Elimination Period and until the Covered Person reaches the end of the Maximum Benefit Period, as a result of an Injury or Sickness, he is unable to perform the Material and Substantial Duties of his Own Occupation.

    Applicable to Class 2:

i.   if the Covered Person is eligible for the 24 Month Own Occupation benefit, "Disability" or "Disabled" means that during the Elimination Period and the next 24 months of Disability the Covered Person, as a result of Injury or Sickness, is unable to perform the Material and Substantial Duties of his Own Occupation; and

ii.   thereafter, the Covered Person is unable to perform, with reasonable continuity, the Material and Substantial Duties of Any Occupation.

12.     In support of her claim for long term disability benefits, Plaintiff submitted to Liberty, medical records and Liberty medical questionnaires from her treating physicians supporting her disability as defined by the relevant Liberty policy.

13.     In a letter dated May 18, 2011 Liberty notified Plaintiff it was approving her long term disability claim. Liberty paid Plaintiff long term disability benefits for the period of April 13, 2011 through September 20, 2012.

14.     Plaintiff also applied for and received Social Security disability benefits through the Social Security Administration (hereinafter referred to as the "SSA").

15.     The SSA found Plaintiff became disabled from engaging in any gainful occupation which may have existed in the national economy as of October 13, 2010.

1  Plaintiff submitted to Liberty a copy of her October 2, 2011, Notice of Award from the
2  Social Security Administration.  Plaintiff's claim for Social Security disability benefits was
3  approved prior to an Administrative Law Judge hearing.

4     16.   Plaintiff continues to receive Social Security disability benefits through the
5  date of filing this Complaint.

6     17.   The SSA's definition of disability is more stringent and difficult to meet than
7  the aforementioned definition of disability in the Liberty policy for the first 24 months of
8  disability and substantially similar to the policy's definition of disability after the first 24
9  months of disability.  Therefore, the SSA's approval of Plaintiff's claim is relevant evidence
10 for this Court to consider with regard to the lawfulness of Liberty's decision to terminate
11 Plaintiff's benefits.

12    18.   In a letter dated September 20, 2012, Liberty notified Plaintiff it was
13 terminating her long term disability benefits effective that same day.

14    19.   As part of its review of Plaintiff's claim for long term disability benefits,
15 Liberty obtained a medical records only "paper review" of Plaintiff's claim from one of its
16 own consulting physicians, Alex F. Sanchez, Jr., M.D.  Upon information and belief,
17 Plaintiff believes Dr. Sanchez may be a long time consultant for Liberty and has an
18 incentive to protect his own consulting relationship with Liberty by providing paper reviews
19 which selectively review or ignore evidence, such as occurred in Plaintiff's claim in order to
20 provide opinions and report(s) which are favorable to Liberty and which supported the
21 denial of Plaintiff's claim.

22    20.   Plaintiff questions the independence, impartiality and bias of Liberty's own
23 employee to fully and fairly review her claim and she believes Dr. Sanchez's opinions are
24 adversarial because of his conflict of interest as a Liberty employee.  Plaintiff believes

Liberty's financial conflict of interest is a motivating factor in why it referred Plaintiff's claim to its own employee for review.

21. As an additional part of its review of Plaintiff's claim for long term disability benefits, Liberty obtained a medical records only "paper review" of Plaintiff's claim from Ankush Bansal, M.D., a medical consultant for an entity named BMI.

22. Upon information and belief, Plaintiff believes Dr. Bansal may be a long time medical consultant for the disability insurance industry and Liberty. As a result, Plaintiff believes Dr. Bansal may have an incentive to protect his own consulting relationships with the disability insurance industry and Liberty by providing medical records only paper reviews, which selectively review or ignore evidence such as occurred in Plaintiff's claim, in order to provide opinions and report(s) which are favorable to insurance companies and which supported the denial of Plaintiff's claim.

23. Pursuant to 29 U.S.C. §1133, Plaintiff timely appealed the September 20, 2012 termination of her long term disability benefits and in support of her appeal, Plaintiff submitted additional medical evidence demonstrating she met any definition of disability set forth in the relevant Liberty policy.

24. Plaintiff submitted to Liberty a statement from her treating physician who opined Plaintiff should *"continue off work"* as part of his treatment plan.

25. As part of its review of Plaintiff's claim for long term disability benefits, Liberty obtained another medical records only "paper review" of Plaintiff's claim from one of its own consulting physicians, Robert Morrison, M.D. Upon information and belief, Plaintiff believes Dr. Morrison may be a long time consultant for Liberty and has an incentive to protect his own consulting relationship with Liberty by providing paper reviews which selectively review or ignore evidence, such as occurred in Plaintiff's claim in order to

1 provide opinions and report(s) which are favorable to Liberty and which supported the denial of Plaintiff's claim.

26. Plaintiff questions the independence, impartiality and bias of Liberty's own employee to fully and fairly review her claim and she believes Dr. Morrison's opinions are adversarial because of his conflict of interest as a Liberty employee. Plaintiff believes Liberty's financial conflict of interest is a motivating factor why it referred Plaintiff's claim to its own employee for review.

27. Prior to its final denial, Liberty never shared with Plaintiff the report authored by Dr. Morrison and never engaged Plaintiff in a dialogue so she could either respond to his reports and/or perfect her claim. Liberty's failure to provide Plaintiff with the opportunity to respond to Dr. Morrison's report precluded a full and fair review pursuant to ERISA and is a violation of Ninth Circuit case law.

28. In a letter dated November 6, 2012, Liberty again notified Plaintiff it had denied her claim for long term disability benefits under the policy. In the letter, Liberty also notified Plaintiff she had exhausted her administrative levels of review and could file a civil action lawsuit in federal court pursuant to ERISA.

29. In evaluating Plaintiff's claim on appeal, Liberty had an obligation pursuant to ERISA to administer Plaintiff's claim "solely in her best interests and other participants" which it failed to do. [1]

---

[1] It sets forth a special standard of care upon a plan administrator, namely, that the administrator "discharge [its] duties" in respect to discretionary claims processing "solely in the interests of the participants and beneficiaries" of the plan, § 1104(a)(1); it simultaneously underscores the particular importance of accurate claims processing by insisting that administrators "provide a 'full and fair review' of claim denials," Firestone, 489 U.S., at 113, 109 S. Ct. 948, 103 L. Ed. 2d 80 (quoting § 1133(2)); and it supplements marketplace and regulatory controls with judicial review of individual claim denials, see § 1132(a)(1)(B). *Metro. Life Ins. Co. v. Glenn*, 128 S. Ct. 2343, 2350 (U.S. 2008).

30. Liberty failed to adequately investigate Plaintiff's case and failed to engage Plaintiff in a dialogue during the appeal of her claim with regard to what evidence was necessary so Plaintiff could perfect her appeal and claim. Liberty's failure to investigate the claim and to engage in this dialogue or to obtain the evidence it believed was important to perfect Plaintiff's claim is a violation of ERISA and Ninth Circuit case law, and a reason she did not receive a full and fair review.

31. Plaintiff believes Liberty provided an unlawful review which was neither full nor fair and that violated ERISA, specifically, 29 U.S.C. § 2560.503-1, by failing to credit Plaintiff's reliable evidence; failing to adequately investigate her claim; failing to have her examined by a medical professional when the policy allowed for an examination; providing one sided reviews of Plaintiff's claim that failed to consider all evidence submitted by her and/or de-emphasized medical evidence which supported Plaintiff's claim; disregarding Plaintiff's self-reported symptoms; failing to consider all the diagnoses and/or limitations set forth in Plaintiff's medical evidence as well as the impact the combination of those diagnoses and impairments would have on her ability to work; failing to engage Plaintiff in a dialogue so she could submit the necessary evidence to perfect her claim and failing to consider the impact the side effects from Plaintiff's medications would have on her ability to engage in any occupation.

32. Plaintiff further believes the reason Liberty provided an unlawful review which was neither full nor fair and that violated ERISA, specifically, 29 U.S.C. § 2560.503-1, is due to the dual roles Liberty undertook as decision maker and payor of benefits which created an inherent conflict of interest and this conflict may also be the reason the Company and/or Plan retained Liberty to insure and administer Plaintiff's disability claim.

33. Plaintiff is entitled to discovery regarding the aforementioned conflicts of interest of Liberty and any individual who reviewed her claim and the Court may properly weigh and consider evidence regarding the nature, extent and effect of *any* conflict of interest which may have impacted or influenced Liberty's decision to deny her claim.

34. With regard to whether Plaintiff meets the definition of disability set forth in the policy, the Court should review the evidence in Plaintiff's claim *de novo*, because even if the Court concludes the policy confers discretion, the unlawful violations of ERISA committed by Liberty as referenced herein are so flagrant they justify *de novo* review.

35. As a direct result of Liberty's decision to deny Plaintiff's disability claim, she has been injured and suffered damages in the form of lost disability benefits, in addition to other potential employee benefits she may have been entitled to receive through or from the Plan and/or Company as a result of being found disabled. Plaintiff believes other potential employee benefits may include but not be limited to, health and other insurance related coverage or benefits, retirement benefits and/or a pension, life insurance coverage and/or the waiver of the premium on a life insurance policy providing coverage for her and her family/dependents.

36. Pursuant to 29 U.S.C. §1132, Plaintiff is entitled to recover unpaid benefits, prejudgment interest, reasonable attorney's fees and costs from Defendants.

37. Plaintiff is entitled to prejudgment interest at the rate of 10% per annum pursuant to A.R.S. §20-462, or at such other rate as is appropriate to compensate her for losses she incurred as a result of Defendants' nonpayment of benefits.

1       WHEREFORE, Plaintiff prays for judgment as follows:

2       A.      For an Order requiring Defendants to pay Plaintiff her disability benefits
3  and any other employee benefits she may be entitled to as a result of being found disabled
4  pursuant to the Liberty policy from the date she was first denied these benefits through
5  the date of judgment and prejudgment interest thereon;

6       B.      For an Order directing Defendants to continue paying Plaintiff the
7  aforementioned benefits until such time she meets the conditions for termination of benefits;

8       C.      For attorney's fees and costs incurred as a result of prosecuting this suit
9  pursuant to 29 U.S.C. §1132(g); and

10      D.      For such other and further relief as the Court deems just and proper.

DATED this 25th day of October, 2013.

SCOTT E. DAVIS. P.C.

By:     */s/ Scott E. Davis*
        Scott E. Davis
        Attorney for Plaintiff